## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PERKASIE REGIONAL AUTHORITY,<br><br>Plaintiffs,<br><br>v.<br><br>AGC CHEMICALS AMERICAS INC.;<br>AGC, INC. (f/k/a Asahi Glass Co., Ltd.);<br>ARCHROMA MANAGEMENT, LLC;<br>ARCHROMA U.S., INC.;<br>ARKEMA INC.;<br>BASF CORPORATION;<br>BUCKEYE FIRE EQUIPMENT COMPANY;<br>CARRIER GLOBAL CORPORATION;<br>CHEMDESIGN PRODUCTS, INC.;<br>CHEMGUARD, INC.;<br>CHEMICALS, INCORPORATED;<br>CHUBB FIRE, LTD.;<br>CLARIANT CORPORATION;<br>DEEPWATER CHEMICALS, INC.;<br>DOE DEFENDANTS 1-49;<br>DYNAX CORPORATION;<br>KIDDIE PLC, INC.;<br>NATION FORD CHEMICAL COMPANY;<br>NATIONAL FOAM, INC.;<br>RAYTHEON TECHNOLOGIES CORPORATION (f/k/a United Technologies Corporation);<br>TYCO FIRE PRODUCTS LP; and<br>UTC FIRE & SECURITY AMERICAS CORPORATION, INC.,<br><br>Defendants. | Civil Action No. 24-2741<br><br>**NOTICE OF REMOVAL** |

Defendants Tyco Fire Products LP and Chemguard, Inc. (collectively "Tyco" unless identified individually by full name), by undersigned counsel, hereby give notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Court of Common Pleas, Bucks County (the "State Court"), to the United States District Court for the Eastern District of

Pennsylvania.  As grounds for removal, Tyco alleges as follows on personal knowledge as to its own conduct and status and on information and belief as to all other matters:

<u>**PRELIMINARY STATEMENT**</u>

1.      Plaintiff Perkasie Regional Authority seeks to hold Tyco and certain other Defendants liable based on their alleged conduct in designing, manufacturing, marketing, distributing, and/or selling aqueous film-forming foam ("AFFF") that Plaintiff alleges has resulted in contamination.

2.      Specifically, Plaintiff alleges that AFFF manufactured by certain Defendants contained per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), and that the use of those substances caused contamination of Plaintiff's property, water supplies, and water systems (collectively, "Plaintiff's Property"), causing it injury.

3.      At least some of the AFFF that gives rise to Plaintiff's claims has been manufactured by a select group of suppliers (including Tyco) in accordance with the military's rigorous specifications ("MilSpec AFFF").  Under the federal "government contractor" defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), Tyco is immune to tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product.  Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), Tyco is entitled to remove this action in order to have its federal defense adjudicated in a federal forum.  *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810–15 (3d Cir. 2016).  Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed."  *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## BACKGROUND

4.     This action was filed on April 17, 2024, in the State Court, bearing Index No. 2024-02454 (Ex. A, Complaint).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 118(a) and 1441(a) because the State Court is located within the Eastern District of Pennsylvania.

5.     Tyco Fire Products LP accepted service of the Summons and Complaint on June 3, 2024.  This Notice of Removal is timely filed in accordance with 28 U.S.C. § 1446(b).

6.     Plaintiff generally alleges that certain Defendants, including Tyco, have designed, manufactured, marketed, distributed, and/or sold AFFF that contains PFAS.  Plaintiff alleges that the use of AFFF has caused contamination of Plaintiff's Property.  Plaintiff further alleges that it has incurred or will incur costs associated with the investigation, remediation, and monitoring of the PFAS contamination of Plaintiff's Property.

7.     Tyco is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiff's action as a whole under § 1442(a)(1).  *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Hilbert v. McDonnell Douglas Corp.,* 529 F. Supp. 2d 187, 195 (D. Mass. 2008).

8.     Pursuant to 28 U.S.C. §  1446(d), Tyco is serving a copy of this Notice of Removal upon all other parties to this case and is also filing a copy with the Clerk of the State Court.

9.     By filing a Notice of Removal in this matter, Tyco does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and Tyco specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

10.     Tyco reserves the right to amend or supplement this Notice of Removal.

3

## REMOVAL IS PROPER UNDER THE FEDERAL
## OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1).

11.     Removal here is proper under the federal officer removal statute, 28 U.S.C. §1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) the plaintiff's claims are based on the defendant's conduct "acting under" the United States, its agencies, or officers; (c) the plaintiff's claims are "for or relating to" the defendant's acts under color of federal office; and (d) the defendant raises a colorable federal defense. *Papp*, 842 F.3d at 812; *accord Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135; *Durham*, 445 F.3d at 1251.

12.     Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441(a). Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252. To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal. *Papp*, 842 F.3d at 812 (alterations in original) (internal quotation marks omitted).

13.     All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the Plaintiff's injuries are caused at least in part by MilSpec AFFF.

4

*See, e.g.*, *Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against Tyco and other manufacturers of MilSpec AFFF); *Ayo v. 3M Co.*, 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (same). The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found on multiple occasions that removal under § 1442(a)(1) is proper where the notice of removal alleges that the plaintiff's injuries are caused, at least in part, by MilSpec AFFF. *See In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at *2–3 (D.S.C. May 24, 2019) ("MDL Order 1"); Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6. Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[1]

A.   **MilSpec AFFF**

14.   The United States Naval Research Laboratory developed AFFF in the 1960s to quickly suppress and extinguish liquid fuel fires, which are an ever-present risk in aviation and military environments. Since the late 1960s, following catastrophic fires aboard the aircraft carriers USS *Forrestal* in 1967 and USS *Enterprise* in 1969,[2] the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to put out fires, save lives, protect property, and train its personnel.

---

[1] Following removal, Tyco intends to designate this action for transfer to the MDL.

[2] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

Pursuant to requirements of the Federal Aviation Administration, MilSpec AFFF is also widely used to fight fires at larger civilian airports.  The Naval Research Laboratory has described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

15.     The manufacture and sale of MilSpec AFFF are governed by rigorous military specifications created and administered by Naval Sea Systems Command, a unit of the Department of Defense ("DoD").  The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[4]  All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement.  Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[5]  The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements.  After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[6]  Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

---

[3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[5] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[6] *Id.*

16.     From its inception until 2019, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants."  All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors—the very compounds at issue in the Complaint here.  This requirement has been in force for virtually the entire time period at issue in the Complaint.  In 2019 the MilSpec removed the requirement of "fluorocarbon" surfactants, but the DoD has acknowledged that no AFFF product can satisfy the stringent performance requirements of the MilSpec without the use of PFAS-containing surfactants.  Even today, the AFFF MilSpec expressly contemplates the presence of PFOA and PFOS (subject to recently imposed limits) in AFFF formulations.  Indeed, the AFFF MilSpec recognizes that it is not yet technically feasible for manufacturers to completely eliminate PFOA and PFOS "while still meeting all other military specification requirements."

**B.      All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied.**

### *1.     The "Person" Requirement Is Satisfied.*

17.     The first requirement for removal under the federal officer removal statute is satisfied here because Tyco Fire Products LP and Chemguard, Inc. (a limited partnership and corporation, respectively) meet the definition of "persons" under the statute.  For purposes of § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships."  *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010); *Isaacson*, 517 F.3d at 135–36.

### *2.     The "Acting Under" Requirement Is Satisfied.*

18.     The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out, the duties or tasks of a federal officer.  *Papp*, 842 F.3d at 812.  The phrase "acting under" is to be "liberally construed in favor of the entity seeking removal." *Sawyer*, 860 F.3d at 255 (internal quotation marks omitted).  "[C]ourts have unhesitatingly treated the

7

'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*." *Id.* (emphasis in original).

19.     The requirement of "acting under" a federal officer is met here because the alleged PFAS contamination that is the focus of Plaintiff's claims stems in part from MilSpec AFFF, a vital product provided by Tyco that otherwise "the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137.  MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137.  The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[7]  Accordingly, the military has long depended upon outside contractors like Tyco to develop and supply AFFF.  *See Nessel*, 2021 WL 744683, at *3 (holding that AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also* MDL Order 1, 2019 WL 2807266, at *2 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3–5 (holding likewise in case involving MilSpec AFFF used at Part 139 airport); MDL Order 3, at 3–6 (same).  If Tyco and other manufacturers did not provide MilSpec AFFF, the government would have to manufacture and supply the product itself.

---

[7] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.

20.    In designing and manufacturing the MilSpec AFFF at issue, Tyco acted under the direction and control of one or more federal officers.  Specifically, Tyco acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.  Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[8]

### 3.    The "Under Color Of Federal Office" Requirement Is Satisfied.

21.    The third requirement, that the lawsuit be "for or related to" the defendant's actions taken "under color of federal office," is satisfied when there is a "connection or association" between the defendant's challenged actions and the federal office.  *Papp*, 842 F.3d at 813.  As with the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low."  *Isaacson*, 517 F.3d at 137.[9]

22.    Here, Plaintiff alleges that the use of PFAS in AFFF is the source of its injuries.  Tyco contends that some of the AFFF giving rise to Plaintiff's claimed injuries was MilSpec AFFF, and that the use of PFAS in MilSpec AFFF was required by military specifications.  As a result, Plaintiff's claims against Tyco are connected to its acts taken under color of federal office.  *See Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1, 2019 WL 2807266, at *3 (element satisfied where "[Plaintiff]'s claims arise out of use of AFFF

---

[8] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.

[9] The "acting under" and "under color of" prongs overlap.  Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction."  *Albrecht*, 2011 WL 5109532, at *5.

products that it claims Tyco manufactured and sold, and for which the U.S. military imposes MilSpec standards."); MDL Order 2, at 5 (element satisfied where AFFF products, "for which the military imposes MilSpec standards," were the alleged cause of plaintiff's injuries); MDL Order 3, at 5–6 (same).  It is irrelevant that Plaintiff does not expressly contend that they have been injured by MilSpec AFFF.  Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists."  *Isaacson*, 517 F.3d at 137; *see also Nessel*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

### 4.    The "Colorable Federal Defense" Requirement Is Satisfied.

23.    The fourth requirement ("colorable federal defense") is satisfied by Tyco's assertion of the government contractor defense.

24.    At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'"  *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted).  "A defendant 'need not win his case before he can have it removed.'"  *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)); *O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 54 (D. Mass. 2008) (upon removal, defendant must raise "colorable federal defense").  At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue."  *Cuomo*, 771 F.3d at 116; *see also Kraus v. Alcatel-Lucent*, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage.  Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise

a colorable defense." (internal citation omitted)).  Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants."  *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010).  "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'"  *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

25.     Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."  *Boyle*, 487 U.S. at 512.  Tyco has satisfied these elements for purposes of removal.

26.     The requirement of "reasonably precise specifications" can be met by evidence showing either (a) that the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) that the government continued to purchase or use a product after the government became aware that the product contained the alleged defect.  *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989).  Naval Sea Systems Command participated in the design of MilSpec AFFF, and its role was not a mere "rubber stamping."  It created (and has updated) detailed specifications governing the product's formulation, perform-ance, testing, storage, inspection, packaging, and labeling.  Those specifications are "reasonably precise" in requiring the use of PFAS.  As noted earlier, until 2019 the specification expressly required that MilSpec AFFF contain "fluorocarbon surfactants," all of which are members of the PFAS family.  Even since that express requirement was removed from the specification, the use

of PFAS has been implicitly mandated because PFAS-containing surfactants are the only kind that allow AFFF to meet the performance requirements of the specification.  In addition, in the past and continuing to the present, the DoD has purchased and used MilSpec AFFF with awareness of the product's PFAS content and of the alleged risks associated with PFAS in the product.  *Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

27.     With respect to the second requirement, Tyco's products have appeared on the DoD Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec.  *See id.* at *13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, 2019 WL 2807266, at *3 (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

28.     Regarding the third requirement, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF.  The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand.  Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise

environmental or human health issues.[10]  For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from firefighting exercises are considered to have adverse effects environmentally."[11]  By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."  In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer.  More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA.  Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[12]  Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[13]  If the

---

[10] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002).

[11] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[12] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[13] *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

government is already aware of the relevant product hazards, no warning by the manufacturer to the government is required. *See Ayo*, 2018 WL 4781145, at *14; MDL Order 1, 2019 WL 2807266, at *3 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

29.     At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co.* (*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

30.     Tyco's use of PFAS in MilSpec AFFF was required by military specifications. By seeking to impose tort liability on Tyco for alleged injuries to Plaintiff that were caused at least in part by Tyco's compliance with military specifications, Plaintiff is attempting to use state tort law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

31.     In the MDL, the court has found based on an extensive factual record that the government contractor defense asserted by Tyco and other MilSpec AFFF manufacturers presents

genuine issues of fact for trial.  *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022

WL 4291357, at *12, 15 (D.S.C. Sept. 16, 2022).  A defense that presents triable issues is by

definition better than merely "colorable."


      WHEREFORE, Tyco hereby removes this action from the Court of Common Pleas, Buck

County, to this Court.

                              Respectfully submitted,

Dated: June 24, 2024                 */s/ Kerri E. Chewning*
                              KERRI E. CHEWNING, ESQUIRE
                              ARCHER & GREINER
                              A Professional Corporation
                              Three Logan Square
                              1717 Arch Street, Suite 3500
                              Philadelphia, Pennsylvania 19103
                              (215) 963-3300
                              kchewning@archerlaw.com

                              *Attorney for Defendants Tyco Fire Products*
                              *LP and Chemguard, Inc.*

229025443 v1

# EXHIBIT A

Case# 2024-02454-0 - JUDGE 43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: JERRY ROBERT DESIDERATO, Esq.



## COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA

PERKASIE REGIONAL AUTHORITY

vs.

CHEMGUARD INC

NO.  2024-02454

## CIVIL COVER SHEET

State Rule 205.5 requires this form be attached to any document <u>commencing an action</u> in the Bucks County Court of Common Pleas.  The information provided herein is used solely as  an aid in tracking cases in the court system.  This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.

Name of Plaintiff/Appellant's Attorney:    JERRY ROBERT DESIDERATO, Esq., ID: 201097

Self-Represented (Pro Se) Litigant ☐

**Class Action Suit**   ☐ Yes   ☒ No

**MDJ Appeal**   ☐ Yes   ☒ No       **Money Damages Requested** ☒

**Commencement of Action**:       **Amount in Controversy**:

Complaint       More than $50,000

## Case Type and Code

Tort:

Product Liability

**Other:**

Case# 2024-02454-0 - JUDGE: 43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: JERRY ROBERT DESIDERATO, Esq.

# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet

Bucks _____ County

| For Prothonotary Use Only: |
| --- |
| Docket No: |

*TIME STAMP*

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Petition
- ☐ Transfer from Another Jurisdiction
- ☐ Declaration of Taking

| Lead Plaintiff's Name:<br>Perkasie Regional Authority | Lead Defendant's Name:<br>AGC Chemicals Americas, Inc. |
| --- | --- |

**Are money damages requested?** ☒ Yes ☐ No

Dollar Amount Requested:
(check one)
- ☐ within arbitration limits
- ☒ outside arbitration limits

**Is this a *Class Action Suit*?** ☐ Yes ☒ No

**Is this an *MDJ Appeal*?** ☐ Yes ☒ No

Name of Plaintiff/Appellant's Attorney: Jerry R. DeSiderato, Esquire, Dilworth Paxson LLP

☐ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**Nature of the Case**: Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** (*do not include Mass Tort*)
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☒ Product Liability (*does not include mass tort*)
- ☐ Slander/Libel/ Defamation
- ☐ Other: _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** (*do not include Judgments*)
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other

- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other _____

- ☐ Other: _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other
- _____
- _____
- ☐ Zoning Board
- ☐ Other: _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other: _____

*Updated 1/1/2011*

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

### IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA – CIVIL DIVISION

| | |
|---|---|
| PERKASIE REGIONAL AUTHORITY, <br><br> Plaintiff, <br><br> v. <br><br> AGC CHEMICALS AMERICAS INC.; <br> AGC, INC. (f/k/a Asahi Glass Co., Ltd.); <br> ARCHROMA MANAGEMENT, LLC; <br> ARCHROMA U.S., INC.; <br> ARKEMA, INC.; <br> BASF CORPORATION; <br> BUCKEYE FIRE EQUIPMENT COMPANY; <br> CARRIER GLOBAL CORPORATION; <br> CHEMDESIGN PRODUCTS, INC.; <br> CHEMGUARD, INC.; <br> CHEMICALS INCORPORATED; <br> CHUBB FIRE, LTD.; <br> CLARIANT CORPORATION; <br> DEEPWATER CHEMICALS, INC.; <br> DOE DEFENDANTS 1-49; <br> DYNAX CORPORATION; <br> KIDDE PLC, INC.; <br> NATION FORD CHEMICAL COMPANY; <br> NATIONAL FOAM, INC.; <br> RAYTHEON TECHNOLOGIES CORPORATION (f/k/a United Technologies Corporation); <br> TYCO FIRE PRODUCTS LP; and <br> UTC FIRE & SECURITY AMERICAS CORPORATION, INC., <br><br> Defendants. | **COMPLAINT IN CIVIL ACTION** <br><br> **No.:** _____ <br><br> **JURY TRIAL DEMANDED** |

#124201172v2

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

# NOTICE

| NOTICE | AVISO |
|---|---|
| You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you. | Le han demandado a Usted en la corte.  Si Usted quiere  defenderse ante las demandas expuestas en las paginas siguientes, Usted tiene viente (20) dias de plazo a partir de la fecha de la demanda y la notificación.  Hace falta asentar un comparencia escrita en persona o con un abogado y entregar a la corte en forma escrita sus defensas u objeciones a la demandas en contra de su persona.  Sea avisado que si Usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificación.  Ademas la corte puede decidir a favor del demandante y requerir que Usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o propiedades u otros derechos personales importantes. |
| YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW.  THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER AND/OR WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED RATE OR NO FEE. | LLEVE ESTA DEMANDA A SU ABOGADO IMMEDIATAMENTE.  SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE PARA CONTRATAR UN ABOGADO, DEBE IR PERSONALMENTE O LLAMAR A LA OFICINA CUYA DIRECCIÓN SE ENCUENTRA ABAJO.  ESTA OFICINA LE PUEDE DAR INFORMACIÓN SOBRE CONTRATAR UN ABOGADO Y/O INFORMACIÓN SOBRE AGENCIAS QUE PODRIAN OFRECER SERVICIOS LEGALES A PERSONAS CON NECESIDAD A UN PRECIO REDUCIDO O GRATUITO. |
| Bucks County Bar Association<br>135 East State Street<br>Doylestown, PA 18901<br>Phone (215) 348-9413, 1-800-479-8585<br>www.bucksbar.org<br><br>PA BAR ASSOCIATION:<br>WWW.PABAR.ORG | Bucks County Bar Association<br>135 East State Street<br>Doylestown, PA 18901<br>Phone (215) 348-9413, 1-800-479-8585<br>www.bucksbar.org<br><br>PA BAR ASSOCIATION:<br>WWW.PABAR.ORG |

#124201172v2

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

## COMPLAINT IN A CIVIL ACTION

AND NOW comes the Plaintiff, Perkasie Regional Authority ("Plaintiff"), by and through its undersigned counsel, brings this action against Defendants, AGC Chemicals Americas, Inc., AGC, Inc. (f/k/a Asahi Glass Co., Ltd.), Archroma Management, LLC, Archroma U.S., Inc., Arkema, Inc., BASF Corporation, Buckeye Fire Equipment Company, Carrier Global Corporation, ChemDesign Products, Inc., Chemguard, Inc., Chemicals Incorporated, Chubb Fire, Ltd., Clariant Corporation, Deepwater Chemicals, Inc., Dynax Corporation, Kidde PLC, Inc., Nation Ford Chemical Company, National Foam, Inc., Raytheon Technologies Corporation (f/k/a United Technologies Corporation), Tyco Fire Products LP (individually and as successor-in-interest to The Ansul Company), UTC Fire & Security Americas Corporation, Inc., and John Doe Defendants 1-49 (collectively, "Defendants"), and alleges as follows:

## SUMMARY OF THE CASE

1. Plaintiff brings this action against Defendants to recover any and all past and future compensatory and/or consequential damages for the investigation, remediation, filtration, removal, disposal, treatment, and monitoring of the contamination of its water resources, water supplies, water storage, treatment and distribution systems, and/or other lands, facilities and properties caused and/or created by Defendants' products, attorneys' fees and costs, as well as any and all other damages available as a result of the actions and/or inactions of Defendants.

2. Plaintiff, Perkasie Regional Authority, was created pursuant to the laws of the Commonwealth of Pennsylvania.

3. Plaintiff owns and operates a public water system, Perkasie Regional Authority (PA1090046), which is supplied by groundwater wells.

4. Plaintiff has a property interest in the water it appropriates, treats, stores, and distributes, as well as its water sources, water supplies, piping, distribution system, treatment

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

systems and plants, and all other lands, properties, infrastructure, and facilities owned and/or operated by Plaintiff (collectively, "Plaintiff's Property").

5.　　　　Per- and polyfluoroalkyl substances ("PFAS"), including but not limited to perfluorooctanoic acid ("PFOA"), have been detected in Plaintiff's Property.

6.　　　　PFOA is a man-made compound that is toxic and persistent in the environment, does not biodegrade, moves readily through surface water, soil and groundwater, and poses a significant risk to human health and safety.

7.　　　　At various times from the 1960s through today, Defendants designed, manufactured, formulated, marketed, distributed, and/or sold PFAS, including but not limited to PFOA and/or its chemical precursors, and/or products containing PFAS, including but not limited to PFOA and/or its chemical precursors (collectively, "Fluorosurfactant Products"), and/or assumed or acquired liabilities for the manufacture and/or sale of Fluorosurfactant Products.

8.　　　　Defendants' Fluorosurfactant Products include, but are not limited to, Teflon, Scotchguard, waterproofing compounds, stainproofing compounds, paper and cloth coatings, waxes, aqueous film-forming foam ("AFFF"), and various other products.

9.　　　　AFFF is a firefighting agent used to control and extinguish Class B fuel fires and is used at sites such as military bases, airports, petroleum refineries, and fire training centers.

10.　　　Defendants designed, manufactured, marketed, distributed, sold, and/or assumed or acquired liabilities for the manufacture and/or sale of Fluorosurfactant Products with the knowledge that these toxic compounds would be released into the environment even when used as directed and intended by the Defendants.

11.　　　Upon information and belief, at all times pertinent herein, Defendants' Fluorosurfactant Products have been released, used, stored, and/or disposed of at or near Plaintiff's Property, including but not limited to Plaintiff's water sources.

#124201172v2

Case# 2024-02454-0 - JUDGE.43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

12. As a result of the use of Defendants' Fluorosurfactant Products for their intended purpose, PFAS have been detected in Plaintiff's Property.

13. Plaintiff's Property has been, and continues to be, contaminated by Defendants' Fluorosurfactant Products.

14. At all times pertinent herein, Plaintiff did not know, nor should Plaintiff have known, of the ongoing contamination of its Property through the use, release, storage, and/or disposal of Defendants' Fluorosurfactant Products as Defendants did not disclose the toxic nature and harmful effects of these Fluorosurfactant Products.

15. Through this action, Plaintiff seeks to recover compensatory and/or consequential damages for all past and future costs to investigate, remediate, remove, filter, dispose of, treat, and monitor the PFAS contamination of Plaintiff's Property caused by the use, release, storage, and/or disposal of Defendants' Fluorosurfactant Products at, around, and/or in the vicinity of Plaintiff's Property, as well as any and all other damages recoverable under applicable laws. Plaintiff also seeks damages and restitution for the diminution of value of Plaintiff's Property, as well as reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this action pursuant to 42 Pa. C.S.A. § 931.

17. This Court has jurisdiction over Defendants in this action pursuant to 42 Pa. C.S.A. § 5322 because Defendants have, among other things, conducted business in this Commonwealth and caused tortious injury in this Commonwealth.

18. Venue is proper in Bucks County because it is the judicial district in which Plaintiff resides and is a citizen, a substantial part of the property that is the subject of this action is situated in the judicial district, and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

#124201172v2

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

## PARTIES

19.     Plaintiff, Perkasie Regional Authority, has the capacity to sue, and its principal address is located at 150 Ridge Road, Sellersville, PA 18960.

20.     Upon information and belief, the following Defendants designed, manufactured, formulated, marketed, promoted, distributed, sold, and/or assumed or acquired liabilities for the manufacture and/or sale of the Fluorosurfactant Products that have and continue to contaminate Plaintiff's Property:

    a.   Defendant Chemguard, Inc. ("Chemguard") is a Texas corporation with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. Upon information and belief, Chemguard has conducted and/or availed itself of doing business throughout the United States, including in Pennsylvania. Chemguard acquired Williams Fire and Hazard Control, Inc. ("WFHC"). Upon information and belief, WFHC has and continues to sell and/or distribute AFFF throughout the United States, including in Pennsylvania.

    b.   Defendant Tyco Fire Products LP ("Tyco") is a Delaware limited partnership with its principal place of business located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446. Tyco acquired Chemguard in 2011. Tyco is registered to do business in Pennsylvania.

    c.   Tyco is the successor-in-interest to The Ansul Company ("Ansul") and manufactures the Ansul brand of products (Ansul and/or Tyco as the successor-in-interest to Ansul will be referred to collectively as "Tyco/Ansul"). Upon information and belief, Tyco/Ansul does and/or has done business throughout the United States, including in Pennsylvania.

4

#124201172v2

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

d.   Defendant Kidde PLC, Inc. is a Delaware corporation with its principal place of business located at 9 Farm Springs Road, Farmington, Connecticut 06032.  Upon information and belief, Kidde PLC, Inc. was part of UTC Fire & Security Americas Corporation, Inc. Upon information and belief, Kidde PLC, Inc. has conducted and/or availed itself of doing business throughout the United States, including in Pennsylvania.

e.   Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, United Kingdom registration number 134210, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.  Upon information and belief, Chubb was part of UTC Fire & Security Americas Corporation, Inc.

f.   Defendant UTC Fire & Security Americas Corporation, Inc. ("UTC") is a Delaware corporation with its principal place of business at 13995 Pasteur Blvd., Palm Beach Gardens, Florida 33418. Upon information and belief, UTC was a division of United Technologies Corporation. UTC is registered to do business in Pennsylvania.

g.   Defendant Carrier Global Corporation is a Delaware corporation with its principal place of business located at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418. Carrier Global Corporation is registered to do business in Pennsylvania.

h.   Defendant Raytheon Technologies Corporation (f/k/a United Technologies Corporation) ("Raytheon Tech f/k/a United Tech") is a Delaware corporation with

5

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

its principal place of business at 870 Winter Street, Waltham, Massachusetts 02451. Raytheon Tech f/k/a United Tech is registered to do business in Pennsylvania.

i.   Defendant National Foam, Inc. is a Delaware corporation with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501. Upon information and belief, National Foam, Inc. is a subsidiary of Angus International Safety Group, Ltd. Upon information and belief, National Foam, Inc. manufactures the Angus brand of AFFF products. Upon information or belief, National Foam, Inc. has conducted and/or availed itself of doing business throughout the United States, including in Pennsylvania.

j.   Defendant Buckeye Fire Equipment Company ("Buckeye") is an Ohio corporation with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086. Upon information or belief, Buckeye has conducted and/or availed itself of doing business throughout the United States, including in Pennsylvania.

k.   Defendant Arkema, Inc. is a Pennsylvania corporation with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Arkema, Inc. is registered to do business in Pennsylvania.

l.   Defendant BASF Corporation is a Delaware corporation with its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932. Upon information and belief, BASF Corporation acquired Ciba-Geigy Corporation and/or Ciba Specialty Chemicals. BASF Corporation is registered to do business in Pennsylvania. Upon information and belief, Ciba-Geigy Corporation and/or Ciba Specialty Chemicals conducted and/or availed itself of doing business throughout the United States, including in Pennsylvania.

6

#124201172v2

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

m.  Defendant ChemDesign Products, Inc. is a Delaware corporation with its principal place of business located at 2 Stanton Street, Marinette, Wisconsin 54143.  Upon information and belief, ChemDesign Products, Inc. has conducted and/or availed itself of doing business throughout the United States, including in Pennsylvania.

n.  Defendant Clariant Corporation is a New York corporation with its principal place of business located at 4000 Monroe Road, Charlotte, North Carolina 28205. Clariant is registered to do business in Pennsylvania.

o.  Defendant Chemicals Incorporated is a Texas corporation with its principal place of business located at 12321 Hatcherville Road, Baytown, Texas 77521. Upon information and belief, Chemicals Incorporated has conducted and/or availed itself of doing business throughout the United States, including in Pennsylvania.

p.  Defendant Nation Ford Chemical Company is a South Carolina corporation with its headquarters located at 2300 Banks Street, Fort Mill, South Carolina 29715. Upon information and belief, Nation Ford Chemical Company has conducted and/or availed itself of doing business throughout the United States, including in Pennsylvania.

q.  Defendant AGC Chemicals Americas, Inc. ("AGCCA") is a Delaware corporation with its principal business office at 55 E. Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341.  Upon information and belief, AGCCA is a subsidiary of AGC, Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd. Upon information and belief, AGCCA has conducted and/or availed itself of doing business throughout the United States, including in Pennsylvania.

r.  Defendant AGC, Inc. f/k/a Asahi Glass Co., Ltd. ("AGC"), is a corporation organized under the laws of Japan and does business throughout the United States.

#124201172v2

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

AGC has its principal place of business at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan.

s.  Defendant Deepwater Chemicals, Inc. is a Delaware corporation with its principal place of business located at 196122 E County Road 40, Woodward, Oklahoma 73801. Upon information and belief, Deepwater Chemicals, Inc. has conducted and/or availed itself of doing business throughout the United States, including Pennsylvania.

t.  Defendant Dynax Corporation is a Delaware corporation with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523. Upon information and belief, Dynax Corporation has conducted and/or availed itself of doing business throughout the United States, including in Pennsylvania.

u.  Defendant Archroma Management, LLC, is a foreign limited liability company registered in Switzerland, with a principal business address of Neuhofstrasse 11, 4153 Reinach, Basel-Land, Switzerland.

v.  Defendant Archroma U.S., Inc. is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217. Upon information and belief, Archroma U.S., Inc. is a subsidiary of Archroma Management, LLC. Upon information and belief, Archroma U.S., Inc. has conducted and/or availed itself of doing business throughout the United States, including in Pennsylvania.

w.  Upon information and belief, Defendants John Doe 1-49 were designers, manufacturers, marketers, distributors, and/or sellers of Fluorosurfactant Products that have and continue to contaminate Plaintiff's Property. Although the identities of the John Doe Defendants are currently unknown, it is expected that their names

8

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

will be ascertained during discovery, at which time Plaintiff will move for leave of this Court to add those individuals' actual names to the Complaint as Defendants.

21.     Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

22.     When the term "Defendants" is used alone, it refers to all Defendants named in this Complaint jointly and severally. When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

## FACTUAL ALLEGATIONS

### A. THE CONTAMINANTS: PFAS

23.     PFOA is a man-made chemical within a class known as perfluoroalkyl acid ("PFAA"). PFAAs are part of the larger chemical family known as per- and polyfluoroalkyl substances ("PFAS"). PFAA is composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, and the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature, which is a reason why these molecules are so persistent. PFOA contains eight carbon-fluorine bonds. For this reason, it is sometimes referred to as "C8."

24.     Some PFAS, including but not limited to PFOA, are highly water soluble, which increases the rate at which they spread throughout the environment, contaminating soil,

9

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

groundwater, and surface water.  Their mobility is made more dangerous by their persistence in the environment and resistance to biologic, environmental, or photochemical degradation.[1]

25.     Some PFAS, including but not limited to PFOA, are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver.  PFAS have been found globally in water, soil, air, as well as in human food supplies, breast milk, umbilical cord blood, and human serum.[2]

26.     Certain PFAS, including but not limited to PFOA, are persistent in the human body. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[3]

27.     Since they were first produced, information has emerged showing negative health effects caused by exposure to some PFAS, including but not limited to PFOA.

28.     According to the United States Environmental Protection Agency ("EPA"), studies indicate that exposure of PFOA "over certain levels may result in…developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes)."[4]

---

[1] See EPA, Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA), EPA Document Number: 822-R-16-005 (May 2016) at 16; and Drinking Water Health Advisory for Perfluorooctane Sulfonate (PFOS), EPA Document Number: 822-R-16-004 (May 2016) at 16, both available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.
[2] See EPA Document Number: 822-R-16-005 (May 2016) at 18-20, 25-27; and EPA Document Number: 822-R-16-004 (May 2016) at 19-21, 26 28.
[3] See EPA Document Number: 822-R-16-005 (May 2016) at 55; and EPA Document Number: 822-R-16-004 (May 2016) at 55.
[4] See "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

#124201172v2

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

29.     EPA has also warned that "there is suggestive evidence of carcinogenic potential" for some PFAS.[5]

30.     EPA has noted that "drinking water can be an additional source [of PFAS in the body] in the small percentage of communities where these chemicals have contaminated water supplies." In communities with contaminated water supplies, "such contamination is typically localized and associated with a specific facility, for example…an airfield at which [PFAS] were used for firefighting."[6]

31.     In 2016, EPA issued Health Advisory Levels of 70 parts per trillion ("ppt") for PFOA and perfluorooctane sulfonic acid ("PFOS") found in drinking water. When both PFOA and PFOS are found in drinking water, the combined concentrations should not exceed 70 ppt.

32.     On June 15, 2022, EPA issued interim, updated drinking water health advisories of 0.004 ppt for PFOA and 0.02 ppt PFOS that replace those EPA issued in 2016.[7]

33.     On March 14, 2023, EPA announced proposed National Primary Drinking Water Regulations to establish legally enforceable levels, called Maximum Contaminant Levels ("MCLs"), for six PFAS known to occur in drinking water: PFOA, PFOS, perfluorononanoic acid ("PFNA"), hexafluoropropylene oxide dimer acid (commonly known as "GenX"), perfluorohexane sulfonic acid ("PFHxS"), and perfluorobutane sulfonic acid ("PFBS").[8]

---

[5] See "Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)" U.S. Environmental Protection Agency Office of Water Health and Ecological Criteria Division, EPA Document Number: 822-R-16-002, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.
[6] See "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.
[7] See "Technical Fact Sheet: Drinking Water Health Advisories for Four PFAS (PFOA, PFOS, GenX chemicals, and PFBS)," EPA 822-F-22-002, available at https://www.epa.gov/newsreleases/epa-announces-new-drinking-water-health-advisories-pfas-chemicals-1-billion-bipartisan.
[8] EPA, "Fact Sheet: EPA's Proposal to Limit PFAS in Drinking Water March 2023," available at https://www.epa.gov/system/files/documents/2023-04/Fact%20Sheet_PFAS_NPWDR_Final_4.4.23.pdf.

#124201172v2

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

34.     EPA is proposing individual MCLs of 4.0 ppt for PFOA and PFOS, and is proposing to regulate PFNA, HFPO-DA, PFHxS, and PFBS as a mixture, through an approach called a Hazard Index.[9]

## B. DEFENDANTS' FLUOROSURFACTANT PRODUCTS

35.     PFAS are used to make a variety of consumer and industrial goods sold, supplied, used, and disposed of in the state, including but not limited to nonstick cookware, waterproofing waxes, stain-preventing coatings, and AFFF.

36.     AFFF is a type of water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports and military bases, among other places.

37.     The Fluorosurfactant Products designed, manufactured, marketed, distributed, and/or sold by Defendants contained PFAS, including but not limited to PFOA and/or its chemical precursors.

38.     Some Defendants manufactured fluorosurfactants through the process of telomerization. Telomerization produced fluorotelomers, including PFOA and/or the chemical precursors to PFOA.

39.     When used as the Defendants intended and directed, Defendants' Fluorosurfactant Products release PFAS, including but not limited to PFOA and/or its chemical precursors, into the environment.

40.     Once PFOA is free in the environment, it does not hydrolyze, photolyze, or biodegrade under typical environmental conditions, and is extremely persistent in the environment. As a result of its persistence, it is widely distributed throughout soil, sediment, surface water, and groundwater.

---

[9] *Id.*

#124201172v2

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM. Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

41.     The use of Defendants' Fluorosurfactant Products as directed and intended by the Defendants allowed PFAS to enter the environment where these compounds migrated through the subsurface and into the groundwater, thereby contaminating the soil, sediment, groundwater, and surface water, including Plaintiff's Property, thereby causing extensive and ongoing damage to Plaintiff and Plaintiff's Property.

42.     Due to the chemicals' persistent nature, among other things, these chemicals have and continue to cause injury and damage to Plaintiff and Plaintiff's Property.

## C. DEFENDANTS' KNOWLEDGE OF PFAS HAZARDS

43.     On information and belief, by the early 1980s, Defendants knew, or reasonably should have known, among other things, that: (a) some PFAS, including but not limited to PFOA, are toxic; and (b) when sprayed in the open environment per the instructions given by the manufacturer, these chemicals readily migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

44.     Defendants also knew or reasonable should have known that some PFAS could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that some PFAS, including but not limited to PFOA, are known carcinogens that cause genetic damage.

45.     By the early 1980s, the industry suspected a correlation between PFAS exposure and human health effects.

#124201172v2

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

46.     In 1980, 3M published data in peer reviewed literature showing that humans retain PFOS in their bodies for years. Based on that data, 3M estimated it could take a person up to 1.5 years to clear just half of the accumulated PFOS from their body after all exposures had ceased.[10]

47.     Based on information and belief, in 2000, under pressure from the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS.

48.     In 1981, the Parkersburg Sentinel reported that DuPont was reassigning fifty female employees to other areas of DuPont's Washington Works' plant after studies showed a chemical (ammonium perfluorooctanoate, also known as FC-143) used in the fluoropolyer division may cause birth defects in children.

49.     DuPont had been studying the potential toxicity of PFOA since at least the 1960s and knew that it was contaminating drinking water drawn from the Ohio River and did not disclose to the public or to government regulators what they knew about the substance's potential effects on humans, animals, or the environment.[11]

50.     By December 2005, the EPA uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the EPA announced the "Largest Environmental Administrative Penalty in Agency History."[12] The EPA fined DuPont for violating the Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the EPA substantial risk information about chemicals they manufacture, process or distribute in commerce."[13]

---

[10] *See* Letter from 3M to Office of Pollution Prevention and Toxics, EPA titled "TSCA 8e Supplemental Submission, Docket Nos. 8EHQ-0373/0374 New Data on Half Life of Perfluorochemicals in Serum," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.

[11] *See, e.g.,* Fred Biddle, "DuPont confronted over chemical's safety," *Wilmington News Journal* (Apr. 13, 2003). The *Wilmington News Journal* is published in Wilmington, Ohio.

[12] $16.5 million.

[13] U.S.Envtl. Prot. Agency, Reference News Release, "EPA Settles PFOA Case Against DuPont for Largest Environmental Administrative Penalty in Agency History" (Dec. 14, 2005), https://www.epa.gov/enforcement/reference-news-release-epa-settles-pfoa-case-against-dupont-largest-environmental (last viewed on January 30, 2018).

#124201172v2

Case# 2024-02454-0 - JUDGE.43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

51.     By July 2011, DuPont could no longer credibly dispute the human toxicity of PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the settlement of a class action over DuPont's releases from the Washington Works plant had reviewed the available scientific evidence and notified DuPont of a "probable link"[14] between PFOA exposure and the serious (and potentially fatal) conditions of pregnancy-induced hypertension and preeclampsia.[15] By October 2012, the C8 Science Panel had notified DuPont of a probable link between PFOA and five other conditions—high cholesterol, kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis.

52.     Notwithstanding this knowledge, Defendants negligently and carelessly: (1) designed, manufactured, marketed, distributed, and/or sold Fluorosurfactant Products; (2) issued instructions on how Fluorosurfactant Products should be used and disposed of (namely, by washing the foam into the soil or wastewater system), thus improperly permitting PFAS to contaminate the surface water, soil, and groundwater in and around the Plaintiff's Property; (3) failed to recall and/or warn the users of Fluorosurfactant Products, negligently designed products containing PFAS, of the dangers of surface water, soil, and groundwater contamination as a result of standard use and disposal of these products; and (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of Fluorosurfactant Products, notwithstanding the fact that Defendants knew the identity of the purchasers of the Fluorosurfactant Products.

53.     As a direct result of Defendants' actions and/or inactions alleged in this Complaint, Plaintiff's Property has been and will continue to be contaminated with PFAS, including but not limited to PFOA, creating an environmental hazard, unless such contamination is remediated. As

---

[14] Under the settlement, "probable link," means that given the available scientific evidence, it is more likely than not that among class members a connection exists between PFOA/C8 exposure and a particular human disease.

[15] See The C8 Science Panel, Status Report: PFOA (C8) exposure and pregnancy outcome among participants in the C8 Health Project (July 15, 2011), http://www.c8sciencepanel.org/pdfs/Status_Report_C8_and_pregnancy_outcome_15July2011.pdf (last viewed on January 28, 2018).

#124201172v2

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

a direct and proximate result of Defendants' actions and/or inactions, Plaintiff must assess, evaluate, investigate, monitor, remove, clean up, correct, treat, and remediate PFAS contamination on its Property at significant expense, loss and damage.

54.     Defendants had a duty and breached their duty to evaluate and test such Fluorosurfactant Products adequately and thoroughly to determine their potential human health and environmental impacts before they sold such products. They also had a duty and breached their duty to minimize the environmental harm caused by Fluorosurfactant Products.

**D.  THE IMPACT OF PFAS ON PLAINTIFF'S PROPERTY**

55.     PFAS have been detected in Plaintiff's Property. The detection and/or presence of PFAS, and the threat of further detection and/or presence of PFAS, in Plaintiff's Property in varying amounts and at varying times has resulted, and will continue to result, in significant injuries and damage to Plaintiff.

56.     Upon information and belief, the invasion of Plaintiff's Property with PFAS is recurring, resulting in new harm to Plaintiff on each occasion.

57.     The injuries to Plaintiff caused by Defendants' conduct constitute an unreasonable interference with, and damage to, Plaintiff and Plaintiff's Property. Plaintiff's interests in protecting its Property constitute a reason for seeking damages sufficient to restore such Property to its pre-contamination condition, in addition to the other damages sought herein.

## **FIRST CAUSE OF ACTION**

### DEFECTIVE DESIGN

58.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs as if fully restated herein.

59.     Defendants were engaged in the business of researching, designing, manufacturing, testing, distributing, marketing, and selling Fluorosurfactant Products.

16

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

60.     The Fluorosurfactant Products which were designed, manufactured, marketed, sold and/or distributed by Defendants were defectively designed when they entered the stream of commerce and received by Plaintiff.

61.     Plaintiff was harmed by Fluorosurfactant Products which were designed, manufactured, marketed, sold and/or distributed by Defendants, and which were defectively designed, did not include sufficient instructions, and did not include sufficient warning of potential safety hazards.

62.     Defendants' Fluorosurfactant Products did not include sufficient instructions or sufficient warnings of potential safety or environmental hazards, such as the pollution of soil, surface water, and groundwater.

63.     Defendants' Fluorosurfactant Products did not perform as safely as an ordinary consumer would have expected them to perform when used or misused in an intended or reasonably foreseeable way.

64.     Defendants represented, asserted, claimed and/or warranted that their Fluorosurfactant Products could be used in conformity with accompanying instructions and labels in a manner that would not cause injury or damage.

65.     As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of Fluorosurfactant Products, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Plaintiff, not to manufacture, sell, or market any product which is unreasonably dangerous for its intended and foreseeable uses.

66.     Defendants' Fluorosurfactant Products used on and/or in the vicinity of Plaintiff's Property were used in a reasonably foreseeable manner and without substantial change in the condition in which the products were sold.

#124201172v2

Case# 2024-02454-0 - JUDGE 43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

67.     It was reasonably foreseeable that Defendants' Fluorosurfactant Products would be used on and/or in the vicinity of Plaintiff's Property.

68.     Defendants knew, or should have known, that use of Defendants' Fluorosurfactant Products in their intended manner would result in the spillage, discharge, disposal, or release of PFAS into the surface water, soil, and groundwater.

69.     Furthermore, Defendants knew, or should have known, that their Fluorosurfactant Products were toxic, could not be contained, and do not readily degrade in the environment.

70.     Plaintiff was, is and will continue to be harmed by Defendants' defectively designed Fluorosurfactant Products.

71.     Defendants' Fluorosurfactant Products' failure to perform safely was a substantial factor in causing Plaintiff's harm.

72.     The gravity of the environmental harm resulting from Defendants' Fluorosurfactant Products was, is, and will be enormous because PFAS contamination is widespread, persistent and toxic.

73.     The likelihood that this harm would occur was, is, and will be very high because Defendants knew and/or should have known that Defendants' Fluorosurfactant Products were toxic, could not be contained, and do not readily degrade in the environment.

74.     At the time of manufacture, there were safer alternative designs that were feasible, cost effective, and advantageous, including not using certain PFAS, including but not limited to PFOA and/or their precursor chemicals, in products.

75.     As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, continues to incur, and/or will incur costs and damages related to the PFAS contamination of its Property, including but not limited to the investigation, monitoring, treatment,

#124201172v2

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

testing, remediation, removal, filtration, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, legal fees, and all other equitable and applicable damages.

76.    Additionally, because Defendants acted with malice in their conscious, willful, and wanton disregard of the probable dangerous consequences of their conduct and its foreseeable impact upon Plaintiff, Plaintiff is entitled to punitive damages.

## SECOND CAUSE OF ACTION

### FAILURE TO WARN

77.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs as if fully restated herein.

78.    As manufacturers, distributors, suppliers, sellers, and marketers of Fluorosurfactant Products, Defendants had a duty to issue warnings to Plaintiff, the public, water providers, and public officials of the risks posed by certain PFAS, including but not limited to PFOA.

79.    Defendants knew that their Fluorosurfactant Products would be purchased, transported, stored, handled, and used without notice of the hazards that certain PFAS, including but not limited to PFOA, pose to human health and the environment.

80.    Defendants breached their duty to warn by unreasonably failing to provide Plaintiff, public officials, purchasers, downstream handlers, and/or the general public with warnings about the potential and/or actual contamination of the environment by PFAS, despite Defendants' knowledge that certain PFAS, including but not limited to PFOA, were real and potential threats to the environment.

81.    Fluorosurfactant Products purchased or otherwise acquired from Defendants were used, discharged, and/or released at and/or in the vicinity of Plaintiff's Property.

82.    Defendants' Fluorosurfactant Products were used in a reasonably foreseeable manner and without substantial changes in the condition in which the products were sold.

#124201172v2

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

83.     Defendants' Fluorosurfactant Products used on and/or in the vicinity of Plaintiff's Property were defective in design and unreasonably dangerous for the reasons set forth above.

84.     Despite the known and/or foreseeable environmental and human health hazards associated with the use and/or disposal of Defendants' Fluorosurfactant Products on or near Plaintiff's Property, including contamination of Plaintiff's Property with PFAS, Defendants failed to provide adequate warnings of, or take any other precautionary measures to mitigate, those hazards.

85.     In particular, Defendants failed to describe such hazards or provide any precautionary statements regarding such hazards in the labeling of their Fluorosurfactant Products.

86.     As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, continues to incur, and/or will incur costs and damages related to the PFAS contamination of its Property, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, filtration, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, legal fees, and all other equitable and applicable damages.

87.     Additionally, because Defendants acted with malice in their conscious, willful, and wanton disregard of the probable dangerous consequences of their conduct and its foreseeable impact upon Plaintiff, Plaintiff is entitled to punitive damages.

## THIRD CAUSE OF ACTION

### PUBLIC NUISANCE

88.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs as if fully restated herein.

89.     Defendants designed, manufactured, distributed, marketed, sold, and/or assumed or acquired liabilities for the manufacture and/or sale of Fluorosurfactant Products in a manner that created, or participated in creating, a public nuisance that unreasonably and substantially interferes

#124201172v2

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

with the use and enjoyment of Plaintiff's Property, and unreasonably endangers or injures the health, safety, and comfort of the general public and Plaintiff, causing inconvenience and annoyance.

90. The unreasonable and substantial interference with the use and enjoyment of Plaintiff's Property includes, but is not limited to: the contamination of Plaintiff's Property, including Plaintiff's water supply source, with PFAS; and the exposure to known toxic chemicals manufactured and/or sold by Defendants.

91. The presence of PFAS causes significant costs, inconvenience, and annoyance to Plaintiff. The contamination affects a substantial number of people who rely upon Plaintiff for commercial and recreational purposes and interferes with the rights of the public at large to clean and safe natural resources and environment.

92. Because Plaintiff is a public entity, municipal lands and natural resources are public and commonly held resources for the benefit of its citizens. Members of the public have a right to have their lands, waters, and natural resources free of Defendants' toxic contamination.

93. The seriousness of the environmental and human health risk far outweighs any social utility of Defendants' conduct in manufacturing Fluorosurfactant Products and concealing the dangers those Products posed to human health and the environment.

94. Defendants substantially interfered with and caused damage to public or common resources that endanger municipal property, as well as the health, safety, and welfare of its citizens. Such actions create, contribute to, or maintain a public nuisance.

95. Actual and threatened PFAS contamination caused by Defendants' conduct has caused, and continues to cause, injury to Plaintiff in the form of present and serious interference with the use, benefit, and/or enjoyment of its Property in a way that an ordinary, reasonable person would find is a substantial inconvenience and annoyance.

#124201172v2

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25, The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

96.     As a result of the actual and threatened PFAS contamination caused by Defendants' conduct, Plaintiff has suffered, and will continue to suffer, harm that is different from the type of harm suffered by the general public, and Plaintiff has incurred, and will continue to incur, substantial costs to remove the contamination from its Property.

97.     Plaintiff did not consent to the conduct that resulted in the contamination of its Property.

98.     Defendants' conduct was a substantial factor in causing the harm to Plaintiff.

99.     Defendants knew or, in the exercise of reasonable care, should have known that the use and introduction of their Fluorosurfactant Products into the environment would and has continuously, unreasonably and seriously endangered and interfered with the ordinary safety, use, benefit, and enjoyment of Plaintiff's Property by Plaintiff.

100.    As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, continues to incur, and/or will incur costs and damages related to the PFAS contamination of its Property, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, filtration, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, legal fees, and all other equitable and applicable damages.

101.    Additionally, because Defendants acted with malice in their conscious, willful, and wanton disregard of the probable dangerous consequences of their conduct and its foreseeable impact upon Plaintiff, Plaintiff is entitled to punitive damages.

## FOURTH CAUSE OF ACTION

### PRIVATE NUISANCE

102.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs as if fully restated herein.

22

#124201172v2

Case# 2024-02454-0 - JUDGE 43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

103.    Plaintiff has a property interest in the water it appropriates, reclaims, treats, stores, and distributes, as well as its water sources, water supplies, piping, distribution systems, water treatment systems, and all other lands, properties and facilities owned and/or operated by Plaintiff.

104.    Plaintiff's Property has been, and continues to be, contaminated by PFAS as a direct and proximate result of the acts and omissions of Defendants as set forth above.

105.    Actual and threatened PFAS contamination caused by Defendants' conduct has caused, and continues to cause, injury to Plaintiff in the form of present and serious interference with the ordinary safety, use, benefit, and/or enjoyment of Plaintiff's Property.

106.    Each Defendant has caused, contributed to, and/or maintained such nuisance, and is a substantial contributor to such nuisance.

107.    As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, continues to incur, and/or will incur costs and damages related to the PFAS contamination of its Property, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, filtration, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, legal fees, and all other equitable and applicable damages.

108.    Additionally, because Defendants acted with malice in their conscious, willful, and wanton disregard of the probable dangerous consequences of their conduct and its foreseeable impact upon Plaintiff, Plaintiff is entitled to punitive damages.

## FIFTH CAUSE OF ACTION

### NEGLIGENCE

109.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs as if fully restated herein.

110.    As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers, shippers, and/or handlers of Fluorosurfactant Products, Defendants owed a duty to Plaintiff, as

23

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

well as to all persons whom Defendants' Fluorosurfactant Products might foreseeably harm, to exercise due care in the instructing, labeling, and warning of the handling, control, use, and disposal of Defendants' Fluorosurfactant Products.

111.     Despite the fact that Defendants knew that some PFAS, including but not limited to PFOA, are toxic, can contaminate soil and water resources, and present significant risks to human health and the environment, Defendants negligently: (a) designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold Fluorosurfactant Products; (b) issued instructions on how Fluorosurfactant Products should be used and disposed of, thus improperly permitting PFAS to enter and contaminate Plaintiff's Property; (c) failed to warn the users of Fluorosurfactant Products of the dangers of soil and water contamination as a result of standard use and disposal of these products; and (d) failed and refused to issue the appropriate warnings to the users of Fluorosurfactant Products regarding the proper use and disposal of these products, notwithstanding the fact that Defendants knew, or could determine with reasonable certainty, the identity of the purchasers of their Fluorosurfactant Products.

112.     A reasonable manufacturer, seller, or distributor, under the same or similar circumstances would have warned of the danger or instructed on the safe use of Fluorosurfactant Products.

113.     Plaintiff was a foreseeable victim of the harm caused by Defendants' Fluorosurfactant Products.

114.     Plaintiff was, is, and will continue to be harmed by Defendants' conduct.

115.     Defendants' Fluorosurfactant Products were designed, manufactured, marketed, distributed, and sold without adequate warning of toxicity, potential human health risks and environmental hazards.

#124201172v2

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the
Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed
by: JERRY ROBERT DESIDERATO, Esq.

116.     Defendants were negligent by not using reasonable care to warn or instruct about the risks associated with their Fluorosurfactant Products.

117.     Defendants knew or reasonably should have known that their Fluorosurfactant Products were dangerous or likely to be dangerous when used or misused in a reasonably foreseeable manner.

118.     Defendants knew or reasonably should have known that users and third parties would not realize the dangers.

119.     Defendants became aware of the human health risks and environmental hazards presented by their Fluorosurfactant Products by no later than the year 2000.

120.     Defendants failed to recall their Fluorosurfactant Products.

121.     Defendants' failure to warn or instruct was a substantial factor in causing Plaintiff's harm.

122.     Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to others and the environment, and thus Defendants were grossly negligent.

123.     As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, continues to incur, and/or will incur costs and damages related to the PFAS contamination of its Property, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, filtration, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, legal fees, and all other equitable and applicable damages.

124.     Additionally, because Defendants acted with malice in their conscious, willful, and wanton disregard of the probable dangerous consequences of their conduct and its foreseeable impact upon Plaintiff, Plaintiff is entitled to punitive damages.

#124201172v2

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

**SIXTH CAUSE OF ACTION**

TRESPASS

125.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs as if fully restated herein.

126.    Plaintiff is the owner and/or actual possessor of Plaintiff's Property.

127.    Defendants knew, or in the exercise of reasonable care should have known, that PFOA and/or PFOS: (a) have a propensity to infiltrate and contaminate soil, sediment, surface water, and groundwater when released into the environment; (b) are mobile and persistent, moving readily through the environment, including through aquifers; (c) do not readily biodegrade; (d) are harmful to human health, animals, and the environment; and (e) are thus likely to cause ecological and economic injuries when released into the environment, such as the PFAS contamination of Plaintiff's Property and other rights.

128.    As commercial manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers, shippers, and/or handlers of Fluorosurfactant Products, and/or as those who assumed or acquired liabilities for the manufacture and sale of Fluorosurfactant Products, Defendants knew or reasonably should have known that their Fluorosurfactant Products would certainly be discharged and released into the environment resulting in the release of PFAS into the soil, sediment, surface water, and/or groundwater, and intrude upon, contaminate, and damage Plaintiff's Property.

129.    Defendants' willful and wanton conduct directly resulted in the contamination of Plaintiff's Property with Defendants' Fluorosurfactant Products without Plaintiff's permission.

130.    The contamination of Plaintiff's Property has varied over time and has not yet ceased. PFAS continue to migrate onto and enter Plaintiff's Property. The contamination is reasonably abatable.

#124201172v2

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

131.   Plaintiff has not consented to, and does not consent to, this trespass or contamination.

132.   Defendants knew or reasonably should have known that Plaintiff would not consent to this trespass.

133.   Plaintiff was, is, and will continue to be harmed by the entry of Defendants' Fluorosurfactant Products onto its Property.

134.   As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, continues to incur, and/or will incur costs and damages related to the PFAS contamination of its Property, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, filtration, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, legal fees, and all other equitable and applicable damages.

135.   Additionally, because Defendants acted with malice in their conscious, willful, and wanton disregard of the probable dangerous consequences of their conduct and its foreseeable impact upon Plaintiff, Plaintiff is entitled to punitive damages.

## SEVENTH CAUSE OF ACTION

### CIVIL CONSPIRACY

136.   Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs as if fully restated herein.

137.   At all times relevant herein, Defendants knew of the hazards that PFAS posed to the environment, including Plaintiff's Property.

138.   Beginning in the 1960s and continuing through the date of the filing of this Complaint, Defendants agreed to engage in unlawful and wrongful acts that caused damage to Plaintiff. Each Defendant performed at least one overt act in furtherance of this conspiracy. Specifically, Defendants colluded for the avowed purpose of providing information about Fluorosurfactant Products to the public and the government, with the true, unlawful purpose of:

27

Case# 2024-02454-0 - JUDGE 43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

    a. intentionally misrepresenting to the EPA and the public that Fluorosurfactant Products were safe and did not pose a risk to human health and the environment;

    b. concealing the dangers of Fluorosurfactant Products, including the Products' characteristics and their propensity to contaminate soil and groundwater, from the government and public by, among other means, repeatedly misrepresenting how Fluorosurfactant Products were being disposed of;

    c. concealing the dangers of PFAS from consumers and the public; and

    d. using their considerable resources to fight legislation concerning Fluorosurfactant Products.

139.      As a direct and proximate result of Defendants' conspiracy, Defendants' Fluorosurfactant Products at all times relevant to this litigation have:

    a. posed and continue to pose a threat to Plaintiff's Property;

    b. contaminated and will continue to contaminate Plaintiff's Property;

    c. contaminated and will continue to contaminate the natural resources, soil, surface water, and groundwater on and within the vicinity of Plaintiff's Property;

    d. required and will continue to require testing and monitoring of Plaintiff's Property for PFAS contamination;

    e. required or will require remediation of PFAS contamination or, where remediation is impracticable or insufficient for Plaintiff, removal and disposal of the contamination;

    f. diminished Plaintiff's confidence in, and the use and enjoyment of, Plaintiff's Property;

    g. diminished the value of Plaintiff's Property due to actual, impending, and/or threatened PFAS contamination; and

#124201172v2

Case# 2024-02454-0 - JUDGE 43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

h. caused and/or will cause Plaintiff to sustain substantially increased damages and expenses resulting from the loss of the safety, use, benefit and/or enjoyment of its Property.

140.    As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, continues to incur, and/or will incur costs and damages related to the PFAS contamination of its Property, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, filtration, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, legal fees, and all other equitable and applicable damages.

141.    Additionally, because Defendants acted with malice in their conscious, willful, and wanton disregard of the probable dangerous consequences of their conduct and its foreseeable impact upon Plaintiff, Plaintiff is entitled to punitive damages.

## PUNITIVE DAMAGES

142.    Plaintiff realleges and reaffirms all allegations as set forth in the preceding paragraphs of this Complaint as if fully restated in this cause of action.

143.    At all times relevant, Defendants had actual knowledge of the wrongfulness of their conduct and the high probability that injury or damage to the Plaintiff would result, and despite that knowledge, willfully, wantonly, and recklessly pursued their course of conduct.

144.    Defendants' conduct was so gross and flagrant as to show a reckless disregard or a conscious wanton, reckless indifference to consequences or a grossly careless disregard for the life, safety, property, or rights of the Plaintiff, and the Defendants actively and knowingly participated in such conduct, and/or their officers, directors, or managers knowingly condoned, ratified or consented to such conduct.

145.    Defendants' willful, wanton, malicious, and/or reckless conduct includes but is not limited to Defendants' failure to take all reasonable measures to ensure PFAS, which they knew

29

Case# 2024-02454-0 - JUDGE.43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

would be harmful to Plaintiff, would not enter into public water systems, thereby harming human health and the environment and causing Plaintiff to incur significant damages to remediate the PFAS contamination, which warrants the imposition of punitive damages.

146.    As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, continues to incur, and/or will incur costs and damages related to the PFAS contamination of its Property, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, filtration, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, legal fees, and all other equitable and applicable damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

1.  Compensatory damages according to proof including, but not limited to:

    a.  costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFAS contamination on and within Plaintiff's Property;

    b.  costs and expenses related to the past, present, and future treatment and remediation of PFAS contamination of Plaintiff's Property;

    c.  costs and expenses associated with and related to the removal and disposal of the contamination; and

    d.  costs and expenses related to the past, present, and future installation and maintenance of monitoring mechanisms to assess and evaluate PFAS on and within Plaintiff's Property.

2.  Diminished property value;

3.  Punitive damages;

#124201172v2

4. Consequential damages;

5. Costs, disbursements, and attorneys' fees of this lawsuit;

6. Pre-judgment and post-judgment interest; and

7. Any other and further relief as the Court deems just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all issues so triable.

DATED: April 17, 2024                    Respectfully submitted,


*/s/ Jerry R. DeSiderato*
Jerry R. DeSiderato (PA ID No. 201097)
**DILWORTH PAXSON LLP**
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Telephone: (215) 575-7000
Fax: (215) 575-7200

**BARON & BUDD, P.C.**
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281
Telephone: (214) 521-3605
Fax: (214) 520-1181
Scott Summy* (TX Bar 19507500)

**COSSICH, SUMICH, PARSIOLA
& TAYLOR, LLC**
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Telephone: (504) 394-9000
Fax: (504) 394-9110
Brandon J. Taylor* (LA Bar 27662)
*\* To be admitted pro hac vice*

*Attorneys for Plaintiff*

31

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee # $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

#124201172v2

## **VERIFICATION**

I, <u>Nicholas T Fretz</u>, hereby state that I am the <u>Manager</u> of Perkasie Regional Authority, and that I have authority to make this verification on behalf of Perkasie Regional Authority.  The averments in the Complaint are true and correct to the best of my knowledge, information, and belief.  I understand that false statements made herein are subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities.

Date: April <u>16</u>, 2024

[NAME]

Case# 2024-02454-0 - JUDGE:43 Received at County of Bucks Prothonotary on 04/17/2024 9:47 AM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: JERRY ROBERT DESIDERATO, Esq.

#124201172v1